IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AARON PIERCE,

          Plaintiff,

v.

KEITH HUBLER,

          Defendants.

Case No. 20-cv-721-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

    This matter is before the Court on Defendant Keith Hubler's motion for summary judgment on the issue of exhaustion of administrative remedies (Docs. 70 and 71). Plaintiff Aaron Pierce, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Stateville Correctional Center ("Stateville"), filed a response (Doc. 149) and a memorandum (Doc. 153) in opposition to the motion. On November 4, 2021, the Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

### BACKGROUND

    On July 23, 2020, Pierce filed a Complaint pursuant to 42 U.S.C. §1983 alleging that on May 19, 2020, while at Pinckneyville Correctional Center ("Pinckneyville"), Hubler used excessive force against him in violation of the Eighth Amendment (Doc. 1). On July 30, 2020, he filed an Amended Complaint, adding Hubler as a named Defendant (Doc. 10). After conducting a review of the Amended Complaint pursuant to 28 U.S.C.

§ 1915A, Pierce was allowed to proceed on two counts:

> **Count 1:**   Eighth Amendment excessive force claim against [Hubler] for the May 19, 2020 assault.
>
> **Count 2:**   State law assault and battery claim against [Hubler].

(Doc. 14, p. 3).

Relevant to the issue of exhaustion, on June 2, 2020, the counselor received Grievance # 1423-06-20 from Pierce dated the same date. Pierce argues that he submitted two identical grievances: an emergency grievance (Doc. 153-1) and a regular grievance (Doc. 153-2). On June 9, 2020, the counselor responded to the grievances (Doc. 153-1 and 153-2). Pierce contends that the counselor checked both the "send directly to the grievance officer" and "send to: Administrative Review Board" boxes (*Id*. at p. 1). The emergency review portion was not completed (Doc. 153-1).

On June 29, 2020, the Administrative Review Board ("ARB") received the grievance. On July 23, 2020, the ARB returned the grievance to Pierce with instructions to provide a copy of the grievance officer and chief administrative officer ("CAO") response (Doc. 71-3, p. 5). Pierce filed his Complaint the same day (Doc. 1).

Pierce then submitted the grievance to the grievance officer where it was received on September 3, 2020 (Doc. 71-3, p. 2). The grievance officer noted that a date was not provided in the grievance in order to establish a time frame under 20 Ill. Admin. Code § 504.810, which requires that a grievance be filed sixty (60) days "after the discovery of the incident." The grievance officer noted that Pierce sent the grievance immediately to the ARB, which did not follow proper procedure, and that he did not submit his grievance

to the grievance office until September 3, 2020 (Doc. 71-3, p. 2). The grievance officer denied the grievance, finding that it was submitted passed the time frame allowed in Section 504.810 (*Id.*). The CAO concurred on September 21, 2020 (*Id.*). On October 16, 2020, Pierce marked that he was appealing the grievance to the ARB. On October 26, 2020, the ARB received the grievance. The ARB noted that the appeal was both not submitted in a timely fashion at the institution level and was also received by the ARB 30 days after the CAO's final decision (*Id.* at p. 1). On October 28, 2020, the grievance was returned to Pierce.

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending.

*Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

A. **Illinois Exhaustion Requirements**

As an IDOC inmate, Pierce was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that

the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a).

## ANALYSIS

Pierce acknowledges that his June 2, 2020 grievance was returned by the ARB on two occasions, and the ARB never issued a decision on the merits. He, instead, argues that his grievance was mishandled both by the counselor and the ARB, making proper exhaustion of his grievance impossible. If his account of the events is true, then his attempts at exhaustion would be deemed thwarted, and he would be allowed to proceed with his lawsuit. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not

required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources).

### A. Emergency Grievance

Pierce argues that he submitted two grievances, one marked as an emergency, to his counselor and that he received the grievances back with checkmarks indicating to both send it directly to the grievance officer and to send it to the ARB.[1] He argues that he was confused about the grievance process, given the differing checkmarks, and chose to send the grievance directly to the ARB. According to Pierce, the counselor caused him confusion, thus thwarting his ability to exhaust his grievance.

The Court finds Pierce's testimony regarding his emergency grievance lacks credibility. He testified that he submitted two identical grievances, one marked an emergency. Pierce also submitted an affidavit stating that he submitted two identical grievances, although at the hearing Pierce testified that he did not sign the affidavit (his signature does indeed appear on the affidavit) and that portions of the affidavit were not accurate (Doc. 149-1). Although Pierce insists that he submitted two grievance forms, the cumulative counseling summary indicates otherwise. The summary, submitted by Hubler at the hearing, indicates that two grievances were received on June 2, 2020:

---

[1] Pierce's testimony and briefs are contradictory on this point. His first brief indicates that the counselor received both forms, answered the non-emergency form and then photocopied the form, marked the emergency box, and returned the grievances (Doc. 149, p. 2). His memorandum of law also indicates that he received "identical responses to *both* grievances." (Doc. 153, p. 4) (emphasis added). Pierce testified, however, that he received only one copy of the grievance back.

Grievance #1423-06-20 regarding the staff assault and Grievance #1419-06-20 regarding medication (Exhibit E, p. 4). There is no indication that duplicate copies of #1423-06-20 were received by the counselor. At the hearing, Chalene Hale, the grievance officer at Pinckneyville, testified that each grievance, including duplicates, would receive separate grievance numbers. Thus, if Pierce had submitted two identical grievances, as he testified, they would have received two separate grievance numbers. The copies of Pierce's grievances have the same number (Docs. 153-1 and 153-2). Both the entries noting the receipt of Pierce's grievance, as well as the return of his grievance also refers to the grievance in the singular, suggesting only one grievance was received and returned (Doc. E, p. 3). Hale also testified that if the grievance was marked as an emergency grievance, it would have indicated as such in the counseling summary. For instance, the counselor received an emergency grievance from Pierce on April 16, 2020, and the entry in the summary clearly states that an emergency grievance was received (Exhibit E, p. 5). But the entry for grievance #1423-06-20 does not indicate that it was an emergency. The records indicate that only one grievance was received by the counselor, and that grievance was not labeled an emergency.

Pierce also offered conflicting testimony about the return of his grievance. His response indicates that two grievances were returned. He stated that he believed the counselor "answered the non-emergency form, photocopied that form, and checked the EMERGENCY Grievance box" on one (Doc. 149, p. 2). But he testified at the hearing that he received only one grievance back from the counselor.

His testimony, to say the least, was contradictory on a number of issues. He

testified that he marked the grievance as an emergency, but later indicated that the counselor marked it as an emergency, noting that they highlighted it but did not respond to it as an emergency. He testified that when he received the grievance back, it was marked as emergency review. Pierce also testified that he did not remember adding anything to his grievance once the counselor responded. But the grievance clearly had later information added after the review by the counselor (*See* Doc. 71-3, p. 4 compared with 153-2, p. 2).

Pierce's own filings also contradict his testimony. His Complaint states that he wrote a grievance and sent it to Springfield, the grievance officer, and the counselor, and that he was waiting on the results (Doc. 1, p. 4). A September 14, 2020 supplement indicates that the grievance was up for second level review and he "was under [the impression the] grievance can go straight to Springfield" due to his injuries (Doc. 26). There is no indication in those filings that his counselor told him to send the grievance to the ARB as he testified.[2]

Simply put, nothing in the record supports Pierce's story that he submitted an emergency grievance to the counselor that was then mishandled. Pierce's counsel candidly acknowledged in his brief that "it may appear to the finder of fact that Plaintiff submitted and thereafter received a non-emergency grievance form, and that [P]laintiff had then simply marked the boxes emergency before forwarding his grievance" (Doc. 149, p. 2 n. 1). It appears from the evidence that is exactly what Pierce did. He

---

[2] Although Pierce argued that he was confused by the grievance process, his filings and testimony indicate an understanding of the process.

submitted one grievance, not marked an emergency. When he received the grievance back from the counselor, he fabricated the contradictory markings, markings that do not make sense given the response that his claims of excessive force were not substantiated. Additionally, he added the checkmark as an emergency grievance and additional allegations. He then sent it directly to the ARB, where it was properly returned. There is no indication that he was thwarted in the process; Pierce simply chose to fabricate directives and bypass proper procedures to submit his grievance directly to the ARB.

### B. ARB Response

At the hearing, Pierce acknowledged that he might not have followed protocol, but placed the blame for his inability to exhaust on the ARB. He argued that the ARB prevented him from exhausting his grievance by failing to send it back in a timely fashion. He argued that if he had received the grievance back in a timely fashion, he could have sought to exhaust it through the normal channels. But the ARB did not hold onto the grievance for an unreasonable amount of time as Pierce suggests. Under 20 Ill. Admin. Code §504.850(e), the ARB has *six months* to review and return the grievance. The ARB returned the grievance on July 23, 2020, well within the timeframe for responding. Although Pierce makes much of the fact that the ARB returned his second submission to the ARB in a mere two days, the Court does not find the time they received the grievance, June 29, 2020, and the time they responded, July 23, 2020, to be an unreasonable amount of time. Further, any delay was caused by Pierce sending the grievance directly to the ARB instead of following proper procedures. As stated above, the evidence is clear that Pierce fabricated the markings and submitted the grievance directly to the ARB. If he had

instead followed proper procedure and submitted his grievance through the grievance process, it would not have been untimely. Any delay leading to the ultimate determination of untimeliness was caused by Pierce's own actions.

Accordingly, the Court finds that Pierce failed to exhaust his administrative remedies prior to filing suit. His Section 1983 claim is, thus, **DISMISSED without prejudice**. To the extent that Pierce raises a state law assault and battery claim, the Court declines to exercise jurisdiction over the remaining claim. *RWJ Management Co., Inc. v. BP Products North America, Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). There are no circumstances which would warrant the Court to continue to hear the state law claim. *Id.* at 480.

## Conclusion

For the reasons stated above, Hubler's summary judgment motion (Docs. 70 and 71) is **GRANTED**. The Clerk is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: November 15, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**